IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDY CARY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00080-K |
| | § | |
| SANDOZ, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Sandoz Inc.'s ("Sandoz") Motion to Dismiss Plaintiff's Original Complaint, Doc. No. 8, Plaintiff Brandy Cary's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Original Complaint and Brief in Support, Doc. No. 10, and Sandoz's Reply in Support of Its Motion to Dismiss Plaintiff's Original Complaint. Doc. No. 11.

Upon consideration of the Parties submissions, the Court **GRANTS** Sandoz's motion to dismiss Plaintiff Brandy Cary's claims without prejudice. Ms. Cary alleges that her employer, Sandoz, compelled her to resign because she took leave under the Family and Medical Leave Act (the "FMLA") to deal with a head injury she suffered during or shortly after a company event. According to Ms. Cary, her manager subjected her to a humiliating tirade after she returned from leave that prompted her to quit. She advances claims for FMLA discrimination, for retaliation against her exercise of

1

FMLA rights, for interference with her FMLA rights, and for discrimination and improper discharge under Texas workers' compensation law. The Court dismisses the FMLA discrimination and retaliation claims because Ms. Cary has not sufficiently alleged that Sandoz discriminated or retaliated against her. Sandoz's purportedly wrongful conduct was forcing Ms. Cary to resign, and the Court concludes that a reasonable employee in Ms. Cary's shoes would not have felt compelled to resign even if her description of her manager's outburst is true. The Court dismisses the FMLA interference claim because Ms. Cary has abandoned it in response to Sandoz's motion to dismiss. Although the Parties primarily debate whether Ms. Cary ever pursued workers' compensation, the Court dismisses the claim for workers' compensation discrimination because Ms. Cary has not identified any adverse consequences she suffered as a result of her alleged pursuit.

## I. BACKGROUND

Unless otherwise noted, the Court draws the following facts from Ms. Cary's Complaint and assumes that they are true. Doc. No. 1.

Ms. Cary began working for Sandoz as an Oncology Account Specialist in 2015. *Id.* ¶ 4.01. Over the next six years, she performed well as an employee, and Sandoz rewarded her with a series of promotions, raises, equity awards, and accolades. *Id.* ¶¶ 4.02–.10. She took short-term disability leave three times during that period, twice as a result of her brother's death, and once to take a recommended course on coping

2

skills. *Id.* ¶¶ 4.04, 4.07, 4.10. Each leave apparently passed without incident. *See id.* ¶¶ 4.01–.10.

In 2022, Ms. Cary encountered misfortune. She became embroiled in divorce litigation and briefly fell ill. *Id.* ¶ 4.11. Within the span of a month, her uncle and her father both died. *Id.* ¶¶ 4.12–.13. Shortly after returning from leave she took around the time of her father's death, Ms. Cary traveled to Hawaii to participate in a "President's Club" event organized by Sandoz that proved to be a disaster for her. *Id.* ¶¶ 4.13–.14. After arriving in Hawaii, she enjoyed a dinner and cocktails with fellow employees as part of the event. *Id.* ¶ 4.15. The employees returned to their hotel by bus following the gathering. *Id.* Upon their arrival at the hotel, several of the executives among the employees stated that the bus driver would take passengers to more drinking spots. *Id.* Ms. Cary joined a group of executives who duly continued the evening's drinking in downtown Honolulu. *Id.* On their second return to the hotel, a guest invited by one of the executives approached Ms. Cary. *Id.* ¶ 4.17. Ms. Cary "thought she was being tackled" and "fell straight back onto the concrete steps" of the hotel "with [the guest] on top of her." *Id.* She suffered a head injury in the fall that medical personnel later diagnosed as a severe concussion. *Id.* ¶¶ 4.17, 4.19.

To recover from her injury, Ms. Cary took twelve weeks of leave under the Family and Medical Leave Act (the "FMLA") while also drawing on short-term disability insurance. *Id.* ¶ 4.21. When she returned to work, Ms. Cary struggled, in part because she had a large backlog of tasks to complete and was unfamiliar with computer and

3

network systems Sandoz installed while she was on leave. *Id.* ¶ 4.22. She reached out to a Sandoz executive to communicate that "maybe she just didn't need to be at Sandoz" because of her difficulty transitioning back to work. *Id.* ¶ 4.23. The executive told her it might be "time for a change." *Id.*

A day later, Ms. Cary's manager called her. *Id.* ¶ 4.24. At some point, he began yelling: "Brandy Cary are you in or out[?] I'm tired of your crap and that stunt you pulled last year. You and your short[-]term disability. Take the rest of the day as personal time off and let me know ASAP what you plan to do with regards to your job." *Id.* After listening to her manager's expression of his sentiments, Ms. Cary contacted Sandoz's human resources department, which told her that "Sandoz did not feel that way about her." *Id.*

On the following morning, Ms. Cary nonetheless told her manager that she was sorry for taking short-term disability and that she "had no choice but to leave the company given his attitude." *Id.* ¶ 4.25. She then called Sandoz's human resources department to ask why the company had not filed a workers' compensation claim for her head injury. *Id.* ¶ 4.26. Department personnel explained that the company made no filing because Ms. Cary's injury occurred after the President's Club dinner and cocktails concluded, which Sandoz viewed as the end of the company event in Hawaii. *Id.*

After her resignation, Ms. Cary filed this action seeking reinstatement at Sandoz, damages, and other remedies. *Id.* ¶¶ 6.01–6.04. She presses four claims for relief. First, she contends that Sandoz impermissibly retaliated against her for taking FMLA leave

4

by forcing her to resign, or "constructively discharging" her. *Id.* ¶ 5.06. Her second claim is similar. She states that Sandoz discriminated against her for her leave-taking. *Id.* at 10. In her Complaint and her briefing, the only discrimination she identifies is her alleged constructive discharge, so the Court analyzes her first and second claims together. For her third claim, Ms. Cary asserts that her constructive discharge interfered with her exercise of her rights under the FMLA. *Id.* ¶ 5.05. Finally, Ms. Cary claims that Sandoz wrongfully discriminated against and constructively discharged her for pursuing workers' compensation. *Id.* ¶ 6.02. Sandoz has moved to dismiss all of Ms. Cary's claims. Doc. No. 8.

## II. LEGAL STANDARD

The Court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if Ms. Cary fails to plead facts sufficient to make the claim plausible. *Ash-croft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the plausibility of a claim, the Court assumes that Ms. Cary's factual allegations are true but does not assume that her legal conclusions are true. *Id.* at 678–79.

## III. DISCUSSION

The Court dismisses Ms. Cary's claims in their entirety without prejudice. The Court first reviews Ms. Cary's FMLA retaliation and discrimination claims. It finds them unsupported by factual allegations showing that Sandoz compelled her to resign because she took FMLA leave. The Court then turns to Ms. Cary's FMLA interference claim and finds that Ms. Cary has abandoned it by failing to oppose Sandoz's motion

5

to dismiss it. The Court concludes its discussion of Ms. Cary's claims by explaining that Ms. Cary has not alleged a causal relationship between her pursuit of workers' compensation and any discrimination against her for purposes of her workers' compensation discrimination claim.

### A. FMLA Retaliation and Discrimination

The Court dismisses Ms. Cary's FMLA retaliation and discrimination claims because her allegations do not show that Sandoz took adverse action against her related to her exercise of FMLA rights.

Under the FMLA, individuals like Ms. Cary who work long enough for an employer with enough employees are entitled to benefits. 29 U.S.C. § 2612(a). These benefits include twelve weeks of leave available every twelve months for serious health conditions that prevent the individual from performing his or her job. *Id.* § 2612(a)(1)(D). A qualifying employer may not discriminate against or discharge employees for taking the permitted leave. *Id.* § 2615(a)(2); *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527–28 (5th Cir. 2021).

Ms. Cary claims that Sandoz violated this prohibition, but the basis for her claim is thin. She says that Sandoz discriminated against and discharged her by compelling her to resign because she took FMLA leave. Doc. No. 10 at 14. She focuses on the heated discussion in which her manager told her that he was "tired of [her] crap," referenced her use of short-term disability insurance, and ordered her to tell him what she "plan[ned] to do" about her job. *Id.* at 13–14 (citing Doc. No. 1 ¶ 4.24). According

to Ms. Cary, her manager's comments were "badgering harassment" or "humiliation" designed to elicit her resignation. *Id.* at 14 (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)).

While the manager's alleged comments were unprofessional, they do not transform Ms. Cary's voluntary resignation into a forced discharge actionable under the FMLA. The law treats some employee resignations like discharges. *See Garza v. Mary Kay, Inc.*, 2010 WL 3260175, at *6 (N.D. Tex. Aug. 17, 2010) (Boyle, J.). That prevents employers from getting rid of employees for discriminatory reasons by making their working conditions intolerable. *See Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 771 (5th Cir. 2001). Before the Court can fit Ms. Cary's resignation into this category of constructive discharges, Ms. Cary must offer factual allegations indicating that a reasonable person in her situation at Sandoz would have felt compelled to resign. *Haley v. All. Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004). On her current pleading, this is an insuperable barrier to Ms. Cary's retaliation and discrimination claims. Courts have widely held that isolated unfriendly exchanges between an employee and a manager, even if humiliating to the employee, would not cause a reasonable employee to resign. *See, e.g., id.* at 651–52 (sarcastic and demeaning comment); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) (manager telling employee she was "no longer wanted" after leave); *Catania v. NYU Langone Health Sys.*, 2022 WL 17539121, at *2, 4 (S.D.N.Y. Dec. 5, 2022) (disdainful, belittling, and mocking conduct, including berating plaintiff for seeking accommodations); *cf. also Judeh v. T-Mobile*

7

*Cent. LLC*, 2023 WL 246843, at *5 (E.D. La. Jan. 18, 2023) (mocking and insults, under similar law applicable to race and national origin discrimination). Nothing in Ms. Cary's pleading suggests that Ms. Cary's exchange with her manager is an exception to this general rule.

Ms. Cary does note in passing that her manager asked her whether she wanted to continue to work for Sandoz, but this factual allegation adds little to her theory of constructive discharge. Doc. No. 10 at 15. Her manager did not tell her that Sandoz would terminate her if she did not resign. *Cf. Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). He invited her to consider whether she wanted to continue her employment. Doc. No. 1 ¶ 4.24. This was nothing Ms. Cary had not already done on her own initiative. Before talking to her manager, she told another Sandoz employee that "maybe she just didn't need to be at Sandoz." *Id.* ¶ 4.23; *see Brown v. Atrium Windows & Doors, Inc.*, 2015 WL 1736982, at *7 (N.D. Tex. Apr. 16, 2015) (Fish, J.) (finding constructive discharge claim weakened by plaintiff's independent suggestion that she resign). If her manager's remarks seemed more discouraging than her own musings, Ms. Cary received assurance when she contacted Sandoz's human resources department and they disavowed what her manager said. Doc. No. 1 ¶ 4.24; *cf. Smith v. Fla. Pars. Juv. Just. Comm'n*, 2017 WL 1177905, at *10 (E.D. La. Mar. 30, 2017) (no constructive discharge where employer withdrew ultimatum to resign or be terminated); *Mandujano v. City of Pharr*, 786 F. App'x 434, 438 (5th Cir. 2019) (similar). The Court does not doubt that her manager's questions inclined Ms. Cary toward

8

quitting, but on the facts alleged, the Court cannot plausibly infer that his conduct would have compelled a reasonable employee to resign.

The Court concludes that Ms. Cary cannot maintain her FMLA retaliation and discrimination claims. She points to no acts other than her resignation by which Sandoz allegedly mistreated her for taking FMLA leave, and she has not sufficiently alleged that Sandoz constructively discharged her as a result of her leave.

### B. FMLA Interference

The Court dismisses Ms. Cary's FMLA interference claim because she has abandoned it. Under the FMLA, a covered employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). In her Complaint, Ms. Cary alleges that Sandoz interfered with her FMLA rights by forcing her to resign after her FMLA leave. Doc. No. 1 ¶ 5.05. It is unclear whether Ms. Cary believes that the resignation interfered with some FMLA right she contemporaneously held or that it hindered her in exercising an FMLA right she would have held if she remained employed at Sandoz. Sandoz assumes the former and moves to dismiss Ms. Cary's interference claim because she has not identified any FMLA rights Sandoz denied her up to the point of her resignation. Doc. No. 8-1 at 10. Ms. Cary does not challenge this characterization of her claim, which is consistent with her Complaint, or offer any other response to Sandoz's motion to dismiss her interference claim. The Court infers that Ms. Cary is no longer pressing her interference claim and dismisses it accordingly. *See Husak v. Baylor Scott & White Health*, 2023 WL

9

6340016, at *10 (N.D. Tex. Sept. 28, 2023) (Brown, J.) (first citing *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017), and then citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

### C. Workers' Compensation Discrimination

The Court dismisses Ms. Cary's claim for workers' compensation discrimination because she has not alleged that Sandoz took adverse action against her as a result of her pursuit of workers' compensation.

Under Texas's Anti-Retaliation Law, an employer may not discriminate against or discharge and employee for taking certain actions in pursuit of workers' compensation, including filing a workers' compensation claim or initiating a workers' compensation proceeding. Tex. Lab. Code § 451.001; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 609 (Tex. 2004).

Ms. Cary claims that Sandoz violated the Anti-Retaliation Law, but it is unclear how she thinks it did so. In her Complaint, she makes only one substantive reference to workers' compensation. She recounts asking Sandoz's human resources department why no one filed a workers' compensation claim related to the head injury she suffered on the evening of Sandoz's President's Club event. Doc. No. 1 ¶ 4.26.

While this statement suggests that there was no claim for the injury, the absence of a claim is not necessarily dispositive of Ms. Cary's request for relief. There is some authority indicating that she instituted a workers' compensation proceeding when she allegedly informed Sandoz of the injury. *See Salas v. Fluor Daniel Servs. Corp.*, 616

S.W.3d 137, 148 & n.1, 149–50 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (collecting cases); Doc. No. 1 ¶ 4.20.  On that view, the Anti-Retaliation Law would protect her conduct if she could show that the injury occurred "on-the-job," a matter that she and Sandoz may dispute.  *See* Doc. No. 1 ¶ 4.26.

The Court does not decide whether Ms. Cary allegedly pursued workers' compensation in a fashion protected by the Anti-Retaliation Law because her pleading falls short on an equally fundamental point.  Whether she is claiming that Sandoz punished her for filing a workers' compensation claim or for notifying Sandoz of her head injury, she has not identified any act Sandoz took against her because of the claim or the notification.  She devotes the relevant portion of her brief solely to an attempt to establish that she told Sandoz about her injury and that someone might have filed a claim.  Doc. No. 10 at 16–17.  Since Ms. Cary cannot point to an adverse consequence she suffered because of her pursuit of workers' compensation, she cannot maintain a claim for impermissible discrimination or discharge.  *See Baptist Mem'l Healthcare Sys. v. Casanova*, 2 S.W.3d 306, 311 (Tex. App.—San Antonio 1999, pet. denied) (discrimination); *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (discharge).

## IV.  CONCLUSION

The Court **GRANTS** Sandoz's motion to dismiss without prejudice.  Doc. No. 8. Ms. Cary makes a conclusory request to amend her Complaint.  Doc. No. 10 at 17.  If she has a good faith basis to do so, she **MAY FILE** a motion for leave to amend her Complaint no later than fourteen days after the entry of this order.  As an

11

attachment to any such motion, she **SHALL FILE** a redline showing the differences between her proposed amended pleading and her original Complaint.

**SO ORDERED.**

Signed December 6th, 2023.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE