IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDY CARY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00080-K |
| | § | |
| SANDOZ, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Brandy Cary's Motion for Leave to Amend Complaint (the "Motion for Leave to Amend"), Doc. No. 21, Defendant Sandoz, Inc.'s ("Sandoz") Response to Plaintiff's Motion for Leave to Amend Complaint and Appendix in support thereof, Doc. Nos. 26–27, and Ms. Cary's Reply to Sandoz's Response to Plaintiff's Motion for Leave to Amend Complaint.  Doc. No. 28.

Upon consideration of the parties' submissions, the Court **DENIES** Ms. Cary's Motion for Leave to Amend her complaint.  In an earlier order, the Court dismissed all four of Ms. Cary's claims in this employment discrimination suit without prejudice, and Ms. Cary now moves to amend them.  The Court concludes that the proposed amendments are futile because the amended claims could not survive a motion to dismiss.  Ms. Cary's amendments to her claims for discrimination and retaliation under the Family and Medical Leave Act ("FMLA") and for workers' compensation discrimination do not cure the issues that prompted the Court to dismiss those claims.  Her

1

attempt to revive her previously abandoned claim for FMLA interference lacks merit because she has not identified any cognizable interference with her FMLA rights. Since the Court denies Ms. Cary's proposed amendments and she has not asked to make any further amendments to fix her claims, the Court **DISMISSES** her claims with prejudice.

## I.  BACKGROUND

The Court described Ms. Cary's allegations at length in its prior order dismissing her claims, so it provides a somewhat abbreviated summary of her original and amended allegations in this order. Doc. No. 19 at 2–5. As it did in the prior order, the Court assumes that Ms. Cary's allegations are true. *Id.* at 2.

Brandy Cary was an employee of Sandoz, beginning in 2015 as an Oncology Account Specialist and later holding positions of greater responsibility. Doc. No. 21-1 ¶¶ 4.01–.08. In 2022, Ms. Cary traveled to Hawaii to participate in Sandoz's "President's Club" event. *Id.* ¶¶ 4.14–.19. Once the planned event activities ended, Ms. Cary went out drinking with colleagues. *Id.* ¶¶ 4.15–.16. Toward the end of the evening, one colleague's guest approached Ms. Cary in a way that made her believe he intended to tackle her, and she fell backward and hit her head on a nearby stairway. *Id.* ¶ 4.17.

After medical personnel diagnosed Ms. Cary with a severe concussion, she took a twelve-week short-term disability leave. *Id.* ¶¶ 4.19–.20. While she was on leave, Sandoz nurses "constantly" called Ms. Cary to tell her that her doctors were giving her bad advice and that she needed to get a second opinion. *Id.* ¶ 4.19. Her manager also

repeatedly contacted her to check on her health and, on at least one occasion, to ask her to fill out an expense report and check her emails. *Id.* ¶¶ 4.20–.21.

Ms. Cary returned to work but struggled with the transition, leading her to tell a Sandoz executive that "maybe she just didn't need to be at Sandoz" anymore. *Id.* ¶ 4.23. One day later, her manager confronted her. *Id.* ¶ 4.24. He yelled, "Brandy Cary are you in or out? I'm tired of your crap and that stunt you pulled last year. You and your short[-]term disability. Take the rest of the day as personal time off and let me know ASAP what you plan to do with regards to your job." *Id.* Ms. Cary contacted human resources, who assured her that Sandoz "did not feel that way about her," but she nonetheless informed her manager that she would resign. *Id.* Her manager told her what to write in her resignation notice and to whom she should send it. *Id.* She later learned secondhand that her manager "abused" at least five other women on his team and either fired them or intimidated them into resigning. *Id.* ¶ 4.27.

Before leaving Sandoz, Ms. Cary again contacted human resources, this time to ask why Sandoz did not file a workers' compensation claim for her head injury. *Id.* ¶ 4.26. An employee explained that the injury occurred after the official President's Club event concluded. *Id.* Sandoz did not give Ms. Cary a form for providing notice of a workers' compensation claim or accept a claim from her. *Id.* ¶ 4.28.

Ms. Cary sued Sandoz under the FMLA and Texas's workers' compensation Anti-Retaliation Law. Doc. No. 1. The Court dismissed her claims, and she now moves for leave to amend her complaint. Doc. Nos. 19, 21. As amended, her four proposed

claims are: (1) an FMLA discrimination claim and (2) an FMLA retaliation claim that the Court will analyze together because both depend on the theory that Sandoz forced Ms. Cary to resign, (3) an FMLA interference claim based on Ms. Cary's resignation as well as Sandoz's communications with her while she was on leave, and (4) a workers' compensation discrimination claim based on Sandoz's alleged failure to help Ms. Cary obtain workers' compensation for her head injury.  Doc. No. 21-1 ¶¶ 5.01–6.04; Doc. No. 28 at 3–4.

## II. LEGAL STANDARD

The Court freely grants plaintiffs leave to amend their complaints when justice so requires.  Fed. R. Civ. P. 15(a)(2).  The Court may deny an amendment if it would be futile, meaning that the complaint, as amended, fails to state a claim upon which relief could be granted.  *Burnette v. RateGenius Loan Servs.*, 671 F. App'x 889, 894 (5th Cir. 2016).  A complaint states a viable claim for relief if, after accepting the plaintiff's factual allegations and disregarding her legal conclusions, the claim is plausible.  *Knox-Colburn v. Daniel Healthcare, Inc.*, 2023 WL 150005, at *1 (N.D. Miss. Jan. 10, 2023).

## III. DISCUSSION

The Court denies Ms. Cary's Motion for Leave to Amend her complaint as futile, largely because her proposed amendments do not correct the issues that previously led the Court to dismiss her claims.  Since Ms. Cary's amendments do not fix her claims and she does not propose any further amendments that would, the Court dismisses her claims with prejudice.

4

A. **FMLA Retaliation and Discrimination**

The Court denies Ms. Cary's proposed amendments to her FMLA retaliation and discrimination claims because her amended allegations, like her initial allegations, do not support her theory that Sandoz forced her to resign after she took FMLA leave. In every twelve-month period, an employee covered by the FMLA has the right to twelve weeks of leave for serious health conditions that prevent her from performing her job. 29 U.S.C. § 2612(a)(1)(D). An employer may not discharge or otherwise discriminate against an employee for exercising her right to leave. *Id.* § 2615(a)(2). Although Sandoz did not actually discharge Ms. Cary, she says Sandoz violated this rule by "constructively" discharging her, or coercing her to resign. Doc. No. 21-1 ¶ 4.27. To succeed on this theory, she must allege facts showing that a reasonable person in her position would have felt compelled to resign. *Haley v. All. Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004). She did not do so in her initial complaint, and her proposed amended complaint has not meaningfully changed on this score.

In its dismissal order, the Court found that a reasonable employee in Ms. Cary's position would not have felt compelled to resign when she did because, so far as she alleged, the only reason for her resignation was an isolated hostile outburst from her manager. Doc. No. 19 at 7–9. In support of her constructive discharge theory, she relied on the exchange in which her manager allegedly asked her whether she was "in or out" and said, "I'm tired of your crap and that stunt you pulled last year. You and your short[-]term disability." Doc. No. 24-1 ¶ 4.24; Doc. No. 10 at 15. Though

5

inappropriate, the Court explained that these alleged one-off comments did not make Ms. Cary's working conditions intolerable. *See* Doc. No. 19 at 7 (collecting cases).

Ms. Cary proposes additions to her constructive discharge allegations, but they are few and mostly puzzling. First, she says she learned after her resignation that her manager forced out other female employees. Doc. No. 28 at 4. Setting aside the fact that she is asserting an FMLA claim and not a sex discrimination claim, events that were unknown to Ms. Cary when she resigned could not possibly have compelled a reasonable person in her position to do the same. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018) (Thapar, J.); *Kalus v. Emtec, Inc.*, 2015 WL 1345722, at *8 (N.D. Ill. Mar. 23, 2015) (St. Eve, J.); *see also Browning v. Sw. Rsch. Inst.*, 2006 WL 8434061, at *5 (W.D. Tex. Oct. 6, 2006), *rep. & rec. adopted*, 2007 WL 9702972 (W.D. Tex. Mar. 1, 2007).

Ms. Cary next complains that her manager "virtually dictated" the contents of her resignation letter, but the Court fails to see how this forced her to quit since she tendered her resignation before her manager told her how she should announce it. Doc. No. 28 at 4; Doc. No. 21-1 ¶ 4.25; *cf. Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 802 (5th Cir. 2018) (per curiam) ("Post-resignation conduct . . . cannot be used to show that pre-resignation working conditions were so intolerable that a reasonable employee would have felt compelled to resign.").

Ms. Cary's last allegation is similarly irrelevant. She says that her manager and Sandoz nurses contacted her about her work and her health while she was on short-

6

term disability leave. Doc. No. 28 at 4. This became a moot point when her leave ended. She does not contend that similar communications continued after her leave, that they would have been inappropriate at that time, or that she planned to take further leave after her return. *See Lara v. Unified Sch. Dist. #501*, 2008 WL 11378842, at *7 (D. Kan. Aug. 13, 2008) (finding no constructive discharge of plaintiff who returned from leave despite purportedly "constant" remarks made to him during leave), *aff'd*, 350 F. App'x 280 (10th Cir. 2009); *cf. also Turnwall v. Tr. Co. of Am.*, 146 F. App'x 983, 987 (10th Cir. 2005) (finding no constructive discharge where objectionable conduct ended prior to plaintiff's resignation); *Reynolds-Diot v. Grp. 1 Software, Inc.*, 2005 WL 1980989, at *5 (N.D. Tex. Aug. 17, 2005) (Lynn, J.) (similar).

The Court concludes that Ms. Cary's proposed amendments to her FMLA retaliation and discrimination claims are futile. She still has not adequately alleged that Sandoz constructively discharged her.

### B. FMLA Interference

The Court also denies Ms. Cary's proposed amendments to her FMLA interference claim. An employee covered by the FMLA may sue her employer if the employer "interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and . . . the violation prejudiced her." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 209 (5th Cir. 2018) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)). Ms. Cary previously abandoned her interference claim and,

despite renewing it, fails to allege that Sandoz deprived her of rights under the FMLA or discouraged her from exercising them.  Doc. No. 19 at 9.

As Sandoz notes, it granted Ms. Cary FMLA leave every time she requested it.  Doc. No. 26 at 9–10.  In the last twelve months of her employment, she took the full twelve weeks of leave allotted to her under the FMLA and apparently faced no resistance when she resumed work with Sandoz at the leave's end.  Doc. No. 21-1 ¶¶ 4.20–.22; 29 U.S.C. § 2612(a)(1).  A plaintiff typically cannot complain when she "receives the leave [s]he requests and returns to the job [s]he left."  *Lister v. Nat'l Oilwell Varco, L.P.*, 2013 WL 5515196, at *29 (S.D. Tex. Sept. 30, 2013) (Rosenthal, J.).

Ms. Cary provides no reason to depart from this rule.  Her primary submission is that Sandoz interfered with her FMLA rights by constructively discharging her, but, as the Court held in the previous subsection, she has not sufficiently alleged that any constructive discharge occurred.  *Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 659 (5th Cir. 2015) (per curiam).  Also missing from this theory is an explanation of what interference the purported constructive discharge caused.  Ms. Cary has not identified any future FMLA right she intended to but could not or would not exercise because of the alleged constructive discharge.  See *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 476–77 (5th Cir. 2018) (per curiam).

The Court also rejects Ms. Cary's secondary argument in support of her interference claim.  Although not clearly articulated, Ms. Cary appears to argue that Sandoz interfered with her FMLA rights by communicating with her during her FMLA leave.

8

Some of these communications were work-related. She says her manager contacted her on at least one occasion while she was on leave for her head injury to ask her to fill out an expense report and check her emails. Doc. No. 21-1 ¶¶ 4.20–.21. The remaining communications were health-related. Ms. Cary asserts that her manager repeatedly asked her about her health during her leave and that Sandoz nurses constantly called her to tell her that her doctors were giving her bad advice and to advise her to get a second opinion. *Id.* ¶¶ 4.19–.21. Even if both sets of communications were unwelcome, a matter not addressed in her complaint, neither interfered with Ms. Cary's exercise of her FMLA rights.

The work-related requests did not deprive Ms. Cary of leave or discourage her from taking it. Ms. Cary fails to allege that she actually used part of her leave to complete the expense report her manager sent to her or to check her emails when he told her to do so. Even if she had, the Fifth Circuit has held that an employer may ask an employee to work during her FMLA leave so long as accepting the work is not a condition of continued employment. *Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 294 (5th Cir. 2020) (per curiam); *see also Lindsey v. Bio-Med. Applications of Louisiana, L.L.C.*, 9 F.4th 317, 324 (5th Cir. 2021); *Lopez v. Texas Christian Univ.*, 2022 WL 3227854, at *3 (N.D. Tex. Aug. 10, 2022) (O'Connor, J.). Ms. Cary neither alleges nor argues that Sandoz would have discharged her if she ignored her manager's requests. She instead seems to rely on her allegation that her manager "constantly harassed her" during her leave. Doc. No. 21-1 ¶ 4.21; Doc. No. 28 at 3. Assuming some form of

9

"constant" harassment could constitute interference with her leave, Ms. Cary's proposed amended complaint is devoid of factual allegations enabling the Court to assess whether it constituted interference here. Her only concrete allegations of work-related inquiries from Sandoz are the few already discussed. *Compare Miniex v. Houston Hous. Auth.*, 2018 WL 7021207, at *15 (S.D. Tex. Oct. 3, 2018) (finding no interference based on a handful of work requests during FMLA leave), *rep. & rec. adopted in relevant part*, 2018 WL 6566653 (S.D. Tex. Dec. 13, 2018), *with Smith-Schrenk v. Genon Energy Servs., L.L.C.*, 2015 WL 150727, at *10 (S.D. Tex. Jan. 12, 2015) (finding interference based on work requests requiring plaintiff to work twenty to forty hour per week while on leave).

Sandoz's inquiries about Ms. Cary's health are at least as innocuous as the work-related inquiries. Employers do not violate the FMLA "simply by contacting an employee to ascertain details regarding the employee's medical condition." *Genova v. City of Glen Cove*, 2017 U.S. Dist. LEXIS 25730, at *83 (E.D.N.Y. Feb. 22, 2017), *rep. & rec. adopted*, 2018 U.S. Dist. LEXIS 101064 (E.D.N.Y. June 15, 2018). Ms. Cary fails to explain why Sandoz's medical inquiries should nonetheless give rise to FMLA liability. She does not assert that the inquiries violated any particular right granted to her by the FMLA. FMLA regulations do limit an employer's contacts with their employees' health providers, but she has alleged no such contacts. 29 C.F.R. § 825.307(a). Insofar as Ms. Cary is implying that Sandoz's inquiries discouraged her from taking FMLA leave, that claim cannot be squared with her admission that she took all of the leave to

10

which she was entitled.  Doc. No. 21-1 ¶ 4.20; *see Galvin-Assanti v. Atl. Props. Mgmt. Corp.*, 483 F. Supp. 3d 125, 139 (D.R.I. 2020); *Husbands v. Fin. Mgmt. Sols., LLC*, 2021 WL 4339436, at *9 (D. Md. Sept. 23, 2021).  Nothing in her pleadings suggest she had plans to take additional leave that Sandoz might have discouraged.

The Court also notes that there is an express statutory basis for Sandoz's alleged requests that Ms. Cary obtain a second medical opinion concerning her head injury.  Under the FMLA, if an employer requires an employee to provide a medical certification that her FMLA leave is appropriate and has "reason to doubt the validity" of the certification provided, it can compel the employee to get a second medical opinion.  29 U.S.C. § 2613(c)(1); 29 C.F.R. § 825.307(b).  If by referencing Sandoz's requests for a second opinion on her condition Ms. Cary is implicitly challenging Sandoz's compliance with this procedure, she has failed to support the challenge with any factual allegations indicating that Sandoz's compliance was defective.  *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (Wilkinson, J.) (finding that merely requiring a second opinion was not interference); *cf. Smith v. Fla. Pars. Juv. Just. Comm'n*, 2017 WL 1177905, at *8 (E.D. La. Mar. 30, 2017).

The Court concludes that Ms. Cary's amended allegations do not state a viable claim for FMLA interference.  There is no indication in her pleadings that Sandoz affected her enjoyment of her FMLA rights.

## C. Workers' Compensation Discrimination

The Court denies Ms. Cary's proposed amendments to her workers' compensation discrimination claim because she has not alleged that Sandoz took any wrongful act against her that was related to her pursuit of workers' compensation. The Court identified this problem when it first dismissed the claim, and the problem remains. Doc. No. 19 at 10.

Under Section 451.001 of the Texas Labor Code, sometimes known as the Anti-Retaliation Law, an employer may not:

> discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith; (2) hired a lawyer to represent the employee in a claim; (3) instituted or caused to be instituted in good faith a [workers' compensation proceeding]; or (4) testified or is about to testify in [such] a proceeding.

To show the discrimination contemplated by the Anti-Retaliation Law, an employee must identify some act her employer took that was adverse to her. *See Porter v. Mesquite Indep. Sch. Dist.*, 1998 WL 641814, at *3 (N.D. Tex. Sept. 15, 1998) (Stickney, M.J.); *Henry v. Spectrum, L.L.C.*, 793 F. App'x 273, 277 (5th Cir. 2019) (per curiam).

In her proposed amended complaint, Ms. Cary offers three candidate acts. First, Sandoz allegedly did not give her forms for providing notice of a workers' compensation claim. Doc. No. 21-1 ¶ 4.28. Second, Sandoz allegedly did not accept her filing of a workers' compensation claim. *Id.* Finally, Sandoz allegedly denied her benefits she might have obtained in a workers' compensation proceeding. *Id.*

Neither of the first two acts prejudiced Ms. Cary. To the extent Ms. Cary is suggesting that she failed to file a workers' compensation claim because Sandoz denied her a notice form or refused to take the claim, her argument is more than a little ironic. In defense of her initial complaint, she was emphatic that "someone obviously filed a workers compensation claim" on her behalf. Doc. No. 10 at 16.

Inconsistency aside, Texas law did not require Ms. Cary to pursue her workers' compensation claim through Sandoz or make it more convenient to do so. Although unclear from her pleading, Ms. Cary presumably wished to give notice of her claim to Division of Workers' Compensation ("DWC") within the Texas Department of Insurance, which is the entity that accepts claims under the Workers' Compensation Act. Tex. Lab. Code § 409.003. No special form was necessary for this purpose. A longstanding DWC regulation provides that the "prescribed claim form, or any written communications from an injured employee, claiming either medical care or compensation payments, giving his name, the date and the general nature of injury, and the name of his employer shall constitute a claim." 28 Tex. Admin. Code § 47.5. The Court fails to see how Ms. Cary was worse off for having to use the DWC's form or some writing of her own devising rather than a form created by Sandoz.

The same considerations show that Sandoz did not prejudice Ms. Cary by refusing to accept her workers' compensation claim. The DWC, not Sandoz, needed to receive the claim. Tex. Lab. Code § 409.003. Ms. Cary does not explain why submitting a claim to the DWC was harder than relaying one through Sandoz.

13

This leaves Ms. Cary's allegation that Sandoz wronged her by denying her benefits she could have received in a workers' compensation proceeding. Doc. No. 21-1 ¶ 4.28. If this is an adverse act, it is not one cognizable under the Anti-Retaliation Law.

The premise that Sandoz that injured Ms. Cary is doubtful since an employer generally has no duty to accept or deny benefits under the Workers' Compensation Act. It is an insurance carrier who pays the benefits and, if the carrier denies payment, a neutral administrative, arbitral, or judicial body that approves or disapproves the denial. Tex. Lab. Code §§ 406.031(a); 409.021(a), 410.104(d), 410.121(a), 410.168(a), 410.202(a), 410.252(a). While an employer can act as its own insurer if it obtains an appropriate certification, Ms. Cary has not alleged that Sandoz self-insures. *Id.* §§ 407.041–.042.

Even if it did, treating Sandoz's alleged denial of benefits as actionable discrimination would distort the workers' compensation system. If the mere denial of workers' compensation benefits violated the Anti-Retaliation Law, a plaintiff could circumvent the statutory requirements for obtaining a workers' compensation award. Among other things, she could skip administrative proceedings and sue directly in court for workers' compensation benefits under the guise of a discrimination claim, which is what Ms. Cary appears to have done. Such a broad interpretation of the Anti-Retaliation Law would bring it into unnecessary tension with the Workers' Compensation Act if not render substantial portions of the Act superfluous. *See Garcia v. B.C. Rests. Ltd.*,

2010 WL 1790204, at *3 (S.D. Tex. May 4, 2010) (finding that the Anti-Retaliation Law "plainly does not apply" to the refusal to pay medical expenses); *cf. In re Accident Fund Gen. Ins. Co.*, 543 S.W.3d 750, 754 (Tex. 2017) (orig. proceeding) (granting mandamus terminating judicial proceedings because DWC had exclusive jurisdiction over Anti-Retaliation Law claim based on conduct governed by provisions of the Workers' Compensation Act). The Court rejects that interpretation.

Since Ms. Cary has not identified any cognizable adverse act Sandoz took against her that relates to her pursuit of workers' compensation, her proposed amendments to her workers' compensation discrimination claim are futile.

### D. Dismissal with Prejudice

Having denied Ms. Cary's Motion for Leave to Amend her complaint, the Court dismisses her claims with prejudice. The Court previously dismissed her claims without prejudice to filing the motion, which has proven unsuccessful. Doc. No. 19 at 11–12. Ms. Cary's proposed amendments do not cure the defects in her claims that the Court noted in in its dismissal order, and her complaint would not state any valid claims for relief if the Court allowed the amendments. *See Norsworthy v. Houston Indep. Sch. Dist.*, 2022 WL 3043411, at *5 (S.D. Tex. Aug. 2, 2022) (Rosenthal, C.J.), *reconsideration denied*, 2022 WL 5081857 (S.D. Tex. Oct. 4, 2022), *aff'd*, 70 F.4th 332 (5th Cir. 2023). Although Ms. Cary abandoned her FMLA interference claim at an earlier stage, the Court even indulged her by considering her attempt to fix the claim but found it wanting. *Cf. Hodges v. Univ. of Texas Sw. Med. Sch.*, 2023 WL 6389426, at *13 (N.D. Tex.

Sept. 29, 2023) (Kinkeade, J.) (dismissing claims with prejudice because plaintiff abandoned them).

Ms. Cary's filings suggest to the Court that there is nothing further she can do cure the problems with her pleading. Her briefing is perfunctory and cites no legal authorities concerning the merits of her claims. Doc. Nos. 21, 28. She does not ask for another chance to amend her complaint or point to any material facts she might allege if given the opportunity to do so. *See Hincapie v. Texas Tech Univ.*, 2024 WL 1054650, at *13 (N.D. Tex. Mar. 11, 2024) (Hendrix, J.); *McLin v. Twenty-First Jud. Dist.*, 614 F. Supp. 3d 278, 293 (M.D. La. 2022). The Court declines to grant that opportunity.

## IV. CONCLUSION

The Court **DENIES** Ms. Cary's Motion for Leave to Amend her complaint and **DISMISSES** her claims with prejudice in their entirety. A final judgment will issue separately.

**SO ORDERED.**

Signed March 26th, 2024.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE